# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edward A. Bobrick | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3606 | **DATE** | 11/6/2000 |
| **CASE TITLE** | William Blair vs. TSI Incorporated | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Order. Defendant's motion to dismiss the plaintiff's complaint is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | 3 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | NOV 07 2000 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | 20 |
| | Mail AO 450 form. | FILED FOR DOCKETING 00 NOV -6 PM 4: 29 | docketing deputy initials |
| | Copy to judge/magistrate judge. | | date mailed notice |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | TH mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM BLAIR & COMPANY, LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 00 C 3606 Edward A. Bobrick, |
| TSI INCORPORATED, a Minnesota corporation, | ) ) ) ) | Magistrate Judge |
| Defendant. | ) ) | |

## MEMORANDUM ORDER

Before the court is the motion of defendant TSI, Inc. ("TSI") to dismiss the complaint of William Blair & Company, LLC ("Blair") for failure to state a claim.[1]

Blair brings a breach of contract claim against TSI, alleging that it failed to pay the entire fee due Blair for financial advisory services. TSI had retained Blair for advice during a merger with a third company, JJF Group, Inc. ("JJF"). Essentially, the parties are quarreling over the fee calculation portion of the contract: TSI paid Blair $1,924,039,

---

[1] The parties, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, consented to have the United States Magistrate Judge exercise jurisdiction over the instant motion, with the District Judge retaining jurisdiction over all other remaining issues or matters not reached, resolved, or dismissed, or otherwise ruled upon or disposed of in the motion.

# I. PLAINTIFF'S COMPLAINT

TSI is a Minnesota corporation that manufactures precision measurement and control instruments. In November of 1998, John J. Fauth, sole shareholder of JJF, another Minnesota corporation, approached two TSI board members and expressed his interest in acquiring TSI. By March of 1999, Fauth had acquired 361,400 shares of TSI (*Complaint*, ¶ 10), and continued to accumulate substantial blocks of shares -- 66,600 (*Id.*, ¶ 15), 124,500 (*Id.*, ¶ 16), and 357,000 (*Id.*, ¶ 21) -- until July 9, 1999. According to the complaint, these acquisitions were all made with a view toward acquiring TSI.

On July 9, JJF made a tender offer to purchase TSI at $14.00 per share. TSI retained Blair, an Illinois firm, to advise it concerning the situation. Under the contract, Blair was to render advice in connection with:

> evaluating possible acquisitions of other companies, a possible corporate restructuring or recapitalization, and a possible business combination (through tender offer, merger, sale or exchange of stock, sale of all or a substantial part of [TSI's] assets or otherwise) of [TSI] with another party (collectively called the "Possible Transaction").

(*Complaint*, Ex. 1). The contract also specifically provided for the JJF "Acquisition Attempt," defined as the proposal by JJF "to acquire all or a substantial part of [TSI's] common stock or assets, including, without limitation, pursuant to [its] proposal dated June 14, 1999." (*Complaint*, Ex. 1).

---

[1](...continued)
    disposed of in the motion.

Blair advised against acceptance of the tender offer, and the TSI board rejected it. Thereafter, Blair attempted, unsuccessfully, to find another buyer interested in TSI. In January of 2000, the TSI board decided it would accept an offer of $15.25 per share, and merge with a subsidiary of JJF, JJF Acquisitions, Inc. This course gained stockholder approval in May of 2000, and TSI became a wholly owned subsidiary of JJF. Under the terms of the merger, stock not held by JJF was converted to a right to receive $15.25 per share. According to the complaint, JJF did not pay itself, and the TSI shares it held were not converted to a right to payment. (*Complaint*, ¶¶ 30-34).

The contract between TSI and Blair provided for fees as follows:

> In the event that the Possible Transaction is consummated, [TSI] shall pay or cause to be paid to Blair a fee equal to the percentage specified, of the Total Consideration received by [TSI] and its stockholders as a result of such consummation. Such percentage shall be 1.25% of total consideration, less the aggregate of all fees theretofore paid . . .

(Exhibit 1, ¶ 2(a)). The contract defines Total Consideration as either:

> the aggregate total amount of cash, securities and the fair market value of all other property paid or payable directly or indirectly to [TSI], any of its security holders or any of its directors or executive officers in conjunction with a Possible Transaction which is consummated.

or:

> [c]onsideration in connection with a tender offer or other purchase or sale of stock will become payable by [TSI] when control of more than 50% or more [sic] of [TSI's] outstanding common stock is acquired by [JJF] or affiliates . . . In that event, such total consideration will be calculated under the above definition of aggregate total consideration as though 100% of the outstanding

3

common stock on a fully diluted basis had been acquired for the highest per share amount paid in the transaction in which control is acquired.

(Exhibit 1, ¶ 2(b)).

Blair claims that the second formula–clause 2–controls the fee calculation in this case. According to Blair's interpretation of the contract, clause 2 is applicable because it pertains specifically to a "purchase or sale of stock" made by JJF. Thus, Blair submits that 11,384,267–the number of shares outstanding–multiplied by $15.25–the highest per share amount paid–would render a figure of $173,610,072. The amount payable to option-holders was an additional $5,582,676, raising the figure to $179,192,748. TSI's net assets at the time were $11,149,380, leaving a final tally of $168,043,368 in Total Consideration. Applying the 1.25% multiplier, Blair arrives at an amount due of $2,100,542. Payments credited to TSI reduce this amount to $1,766,380. To date, TSI has paid just $1,574,039 of this demand.

TSI argues that the "Possible Transaction" was consummated; that is, a merger with another party. TSI argues that the reference in clause 2 to "tender offer or other purchase or sale of stock" cannot be so broadly read as to include a merger. Therefore, according to TSI, the fee must be calculated under clause 1, which pertains to the consummation of "Possible Transactions." Accordingly, TSI claims to have paid the appropriate fee of $1,924,039, but does not provide an illustration of how it arrived at that figure.

## II. ANALYSIS

When considering a motion to dismiss, the court must accept as true all factual allegations in the plaintiff's complaint and draw all reasonable inferences in the plaintiff's favor. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000). The complaint should not be dismissed unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle it to recovery. *Id.*

Here, the parties agree that Minnesota law applies to the contract at issue. The interpretation of a contract, under Minnesota law, is a question of law, unless there is an ambiguity. *Dawn Equipment Co. v. Micro-Trak Systems, Inc.*, 186 F.3d 981, 986 (7th Cir. 1999). An unambiguous contract must be read within the four corners of the document, with language given its plain and ordinary meaning in the context of the entire agreement. *Id.* Effect must be given to all provisions of the contract. *Id.* Whether a contract is ambiguous is also a matter of law; it will be found ambiguous only if it is reasonably susceptible to more than one interpretation. *Id.* Here, as is usually the case, the parties agree that the terms of the contract are not ambiguous, but advance more than one interpretation.

Our interpretation of the contract at issue here suggests that Blair was engaged under both general and specific circumstances. The general circumstance is defined as nearly any "possible business combination" of TSI "with another party." This, the contract defines as a "Possible Transaction." It also allows that a "Possible Transaction"

may include a "tender offer, merger, sale or exchange of stock, sale of all or a substantial part of its assets or otherwise." The more specific circumstance for which Blair was retained is called the "Acquisition Attempt" by the "Bidder." The contract identifies the "Bidder" as John J. Fauth, his affiliates, or any entity he or his affiliates form to effect a "Possible Transaction"; it defines "Acquisition Attempt" as JJF's proposal to acquire all or a substantial amount of TSI assets, without limitation to the bid then on the table.

Then, in the "Fees" section, it would appear that there are two fee structures, differing in formulae for determining "Total Consideration," one for the general circumstances, and one for the specific. The general fee formula takes into account only consideration paid or payable to TSI or its shareholders. The specific formula, limited to circumstances where JJF completes "a tender offer or other purchase or sale of stock," uses "all outstanding common stock on a fully diluted basis" as a multiplier. Thus, application of the "general" fee formula is advantageous to TSI because there would be no charge for the stock already acquired in JJF's takeover bid, since JJF would not pay consideration to itself for stock it already owned.

TSI's motion to dismiss is based on its argument that the merger that occurred was a "Possible Transaction" triggering application of only the general fee formula. TSI states that the specific formula:

> can apply only where the bidder acquired control of more than 50% of TSI's outstanding common stock through tender offer or other purchase or sale of stock. Blair has not alleged these facts.

6

(*Defendant's Memorandum*, at 10-11). Yet, Blair has alleged that TSI became a wholly-owned subsidiary of JJF by merging with JJF Acquisition, Inc. (*Complaint*, ¶¶ 30, 33). Such an allegation would seem to meet TSI's pleading requirement.

The only way it would not, would be if we accepted TSI's other argument that a merger does not constitute a purchase or sale of stock. TSI provides no support or explanation for this position, however, except to state baldly that "tender offer or other purchase or sale of stock" cannot be read so broadly as to include merger. Actually, the phrase "other purchase or sale of stock" is rather broad; it would be difficult to read it narrowly. It certainly covers a merger, which is a purchase or sale of stock.

It may be that the agreement at issue could have been better drafted--it is confusingly worded–but the time for TSI to discover what it means is long passed. All parties were aware of the developing situation underlying the agreement: the ongoing efforts of JJF to gain control of TSI. The agreement was aimed, at least in part, at this situation. TSI cannot now ignore the situation and the terms of the agreement directed toward it.

## III. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the plaintiff's complaint is hereby DENIED.

ENTERED: *Edward A. Bobrick*
EDWARD A. BOBRICK
U.S. Magistrate Judge

**DATE:** November 6, 2000